UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM MARSHALL,

                    Plaintiff,

    -against-

WESTCHESTER MEDICAL CENTER HEALTH
NETWORK, CARLOS ROBINSON, and VANESSA
MACKAY,

                    Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 02/16/2024

No. 22-cv-7990 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Kim Marshall brings this action against Defendants Westchester Medical Center Health Network ("WMCHN"), Carlos Robinson, and Vanessa Mackay (together, "Defendants"). (First Amended Complaint ("FAC"), ECF No. 22.)  Plaintiff asserts claims under (1) the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and (3) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, alleging discriminatory and retaliatory conduct stemming from her request for FMLA leave and her disability. (*Id.*)

      Presently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF No. 33.) For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

      The below facts are drawn from the FAC and are assumed true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.  Plaintiff Joins WMCHN as a Patient Account Manager

In June 2019, Plaintiff joined WMCHN as a Patient Accounts Manager, overseeing a staff of four direct reports and fifty indirect reports. (SAC ¶ 20.) In October 2019, Plaintiff was promoted to Patient Access Manager by the Patient Access Director. (*Id.* ¶ 21.) In this role, Plaintiff was given heightened responsibility, and was responsible for "overseeing patient pre-registration, insurance verification, scheduling, authorization, and financial counseling for both inpatient and outpatient services at Westchester Medical Center ("WMC") and Mid-Hudson Regional Hospital ("MHRH")." (*Id.*)

On December 20, 2019, Plaintiff received her first performance evaluation with a "meet/exceed expectations" rating, her accomplishments were "unquestioned" and she was rated as "successful" in her job responsibilities. (*Id.* ¶¶ 22-23.) At the onset of the COVID-19 pandemic in early 2020, Plaintiff's responsibilities increased—both her and her staff had to cover COVID-19 testing tents and off-site vaccination "pods" in addition to their normal responsibilities. (*Id.* ¶ 24.) Plaintiff raised concerns about her staff being stretched too thin to Vanessa Mackay, Vice President of Revenue Cycle, who told Plaintiff she had to "make it work." (*Id.* ¶ 25.) In June 2021, Plaintiff started reporting to Carlos Robinson, Regional Director of Patient Access. (*Id.* ¶ 26.)

### B.  Plaintiff Requests Her First FMLA Leave and Reasonable Accommodation for Her Disability

Plaintiff "suffers from debilitating arthritis, chronic pain, and limited range of motion in her legs and hips, which makes it exceedingly difficult for her to get dressed, walk any meaningful distances, and sleep." (*Id.* ¶ 27.) She also "takes pain medication and various dietary supplements to help regain her energy due to her lack of sleep." (*Id.* ¶ 28.) Because her arthritis "hinder[ed] her ability to make rounds and supervise staff, sit and work for long periods of time, and commute to WMCHN's sites in Valhalla and MHRH in Poughkeepsie," Plaintiff was impeded in her ability to

do her job. (*Id.* ¶ 28.) Plaintiff also had to purchase a standing desk to perform her work due to the limitations caused by her arthritis. (*Id.*).

In mid-June 2021, Plaintiff and her physician determined that to alleviate her pain she needed two surgeries, a total arthroplasty on each hip, scheduled at least three months apart to allow her time to properly heal. (*Id.* ¶ 29.) On or about June 28, 2021, Plaintiff requested FMLA leave for her to undergo the first surgery. (*Id.* ¶ 30.) In July 2021, Plaintiff was approved to take FMLA leave from August 9, 2021 through October 4, 2021. (*Id.* ¶ 31.) On October 7, 2021, Plaintiff returned to work. (*Id.* ¶ 33.)

On November 30, 2021, Plaintiff received "a far more critical and negative" performance evaluation than the prior one she received. (*Id.* ¶ 34.) Plaintiff was rated as "meet expectations," but Robinson told her she "needed improvement" with "staff management." (*Id.*) Robinson gave only vague examples and guidance on how to improve and gave criticisms of her performance without providing further details. (*Id.*) Concerned with the ambiguous criticisms in her performance evaluation, Plaintiff requested bi-weekly meetings with Robinson to ensure his confidence in her ability to lead and achieve her goals. (*Id.* ¶ 35.) Plaintiff and Robinson met several times over the next two months, but at no point during that time did Robinson raise any concerns with Plaintiff's performance or offer her guidance on how to improve. (*Id.* ¶ 37.) Prior to taking FMLA leave, neither Robinson or any other supervisor gave Plaintiff any indication that they were unhappy with her performance. (*Id.* ¶ 36.)

### C. Plaintiff Experiences Symptoms Related to Her Disability at Work, Defendants Fail to Accommodate Her

On or about December 9, 2021, while working at MHRH, Plaintiff experienced a medical emergency causing her to leave work, and she was later diagnosed with a bleeding ulcer. (*Id.* ¶ 38.) During this time, Plaintiff "noticeably walked around work with a limp and abnormal gait."

(*Id.* ¶ 39.) On or about December 14, 2021, Plaintiff fell to the ground at work, which caused her to badly injury her leg and exacerbated her arthritis pain in her left hip. (*Id.*) Despite being aware of Plaintiff's arthritis diagnosis, the severity of her symptoms, and that her disability impeded her ability to work, neither Robinson or Mackay "engaged in the interactive process to determine whether a reasonable accommodation would permit Plaintiff to better perform her job functions." (*Id.* ¶40.)

### D.  Plaintiff Receives a Performance Improvement Plan ("PIP")

On January 28, 2022, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP"). "Upon [her] information and belief," Defendants did not follow WMCHN protocol or formal disciplinary process before issuing the PIP. (*Id.* ¶ 42.) Further, "upon [her] information and belief," Robinson and Mackay spearheaded and had to approve the PIP. (*Id.* ¶ 45.)

As a result of being placed on a PIP, Plaintiff became ineligible to receive a raise or promotion while on the PIP and for six months after; additionally, the PIP would be added to Plaintiff's personnel file, which could impact Plaintiff's ability to change roles or receive promotions within the WMCHN. (*Id.* ¶¶ 43-44.)

The PIP listed thirteen areas of focus, which Plaintiff responded to with written objections. (*Id.* ¶ 45.) For example, the PIP indicated Plaintiff needed to obtain written consent from patients 100% of the time prior to treatment, despite this being an unreasonable mandate given that it was sometimes impossible to obtain written consent given a patient's medical condition. (*Id.* ¶ 46-47.) Similarly situated employees, namely Virginia ("Ginny") Grogan, was not subject to the completion rate, which Plaintiff alleges demonstrates disparate treatment (*Id.* ¶ 48.) Other areas of improvement included in the PIP were "vague and provided virtually no guidance as to how Plaintiff could actually improve" or "woefully unclear or impossible to objectively measure or

evaluate." (*Id.* ¶¶ 49-50.) The PIP also stated "[i]mprovement must occur immediately and must be maintained. If any portion of this improvement plan is violated at any time during the specified timeframe, disciplinary action to include separation from the company may occur." (*Id.* ¶ 51.)

Plaintiff was placed on the PIP only three months after returning from FMLA medical leave, and only a few months after receiving her November 2021 review which "vaguely" stated she had to improve in a single category. (*Id.* ¶ 52.) Robinson told Plaintiff that Mackay wanted to place Plaintiff on a PIP in October 2021, when Plaintiff was on FMLA leave. (*Id.* ¶ 53.) When Plaintiff observed that she was on leave at that time, Robinson claimed it must have been November. (*Id.*)

### E.  Plaintiff Requests her Second FMLA Leave and Is Terminated

On February 4, 2022, Plaintiff informs Defendants of her upcoming left hip surgery and submits her leave request form to Robinson, giving him notice that she planned her second FMLA leave for March 7, 2022 through May 7, 2022. (*Id.* ¶ 56.) On February 15, 2022, Plaintiff scheduled a meeting with Robinson for February 17, 2022 to discuss ongoing tasks, which he cancelled. (*Id.* ¶ 58.) On February 22, 2022, Plaintiff submitted written objections to Defendants Mackay and Robinson, as well as Nancy Estremera and Christina Brennan in the Human Resources ("HR") Department. (*Id.* ¶ 59.) Earlier that month, Plaintiff complained to Estremera and Brennan that (1) the "vague" and "unattainable" areas of improvement and threatening language in the PIP were retaliatory; (2) she was being unfairly targeted for taking FMLA leave; and (3) she had been treated differently and worse after returning from leave. (*Id.* ¶ 55.) No one responded to her objections or her request to schedule a meeting to discuss her concerns. (*Id.* ¶ 59.)

On March 1, 2022, Plaintiff reported to HR for a meeting. (*Id.* ¶ 62.) While in the waiting room, she was notified that her second FMLA request was approved, and Robinson was copied on

the correspondence. (*Id.* ¶ 62.) Once in the meeting, Plaintiff was handed a termination letter, and informed she could either resign or accept termination. (*Id.* ¶ 63.) Plaintiff was "shocked and taken aback," and Robinson, who was present but did not speak, "stared awkwardly down at his phone." (*Id.*) When asked why she was being fired, Plaintiff was told "performance" without explanation. (*Id.* ¶ 64.) Finally, Plaintiff was told that she forfeited her accrued, unused, paid time off, worth $10,098, because she did not choose to voluntarily resign. (*Id.* ¶ 67.) Plaintiff alleges this is another example of retaliation because she understands that department employees are able to cash out vacation days, subject to a cap. (*Id.* ¶ 67.)

### F. Plaintiff Receives Right to Sue Letter and Subsequently Files Suit

On August 18, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 9.) On November 8, 2022, the EEOC issued Plaintiff a Right to Sue Letter. (*Id.*) Thereafter, on September 19, 2022, Plaintiff commenced this action. (ECF No. 1.)

On November 7, 2022, Defendants sought leave to file a motion to dismiss, which the Court granted. (ECF Nos. 16-18.) On January 4, 2023, Plaintiff filed her FAC. (ECF No. 22.) On or about May 16, 2023, with leave of the Court, Defendants filed their briefings on the instant motion to dismiss Plaintiff's FAC: Defendants' Motion to Dismiss (ECF No. 33), Memorandum of Law in Support, ("Def. Mem.," ECF No. 34), and Reply ("Reply," ECF No. 37). On May 16, 2023, Plaintiff filed her Memorandum of Law in Opposition ("Pl Opp.," ECF No. 36).

### LEGAL STANDARD

Under Rule 12(b)(6), courts must assess whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A court must accept all material factual allegations as

true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662.  A claim is facially plausible when the facts pleaded allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

In her FAC, Plaintiff asserts claims against all Defendants for interference and retaliation under the FMLA (FAC ¶¶ 68-83) and discrimination and retaliation under the NYSHRL (*id.* ¶¶ 84-93). Plaintiff also asserts a claim under the NYSHRL against Defendants Robinson and Mackay for aiding and abetting. (*Id.* ¶¶ 94-98.) Finally, Plaintiff asserts claims against WMCHN for retaliation and discrimination under the ADA (*id.* ¶¶ 99-108). Defendants seek to dismiss each of these claims for failure to state a claim upon which relief can be granted. Defendants also seek to dismiss Plaintiff's NYSHRL claims for failure to comply with notice requirements. For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.    Plaintiff's Federal Claims

Plaintiff alleges claims against the WMCHN for discrimination and retaliation in violation of the ADA and against all Defendants for interference and retaliation in violation of the FMLA. Defendants motion to dismiss Plaintiff's FMLA and ADA retaliation claims is denied. Defendants' motion with respect to Plaintiff's FMLA interference and ADA discrimination claim is granted, and thus the Court dismisses those claims.

A.      **FMLA Claims**

*a.  Retaliation*

To state a retaliation claim under the FMLA, Plaintiff must allege that: "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). At the motion to dismiss stage, "an employment discrimination claim, including an FMLA retaliation claim, need not plead specific facts establishing a prima facie case of discrimination." *Id.* (citations omitted). Rather, Plaintiff "need only plead facts sufficient to state a claim to relief that is plausible on its face." *Id.* (citations omitted) (cleaned up).

An adverse employment action includes "material adverse changes in the terms and conditions of employment," such as "termination of employment," "a material loss in benefits," "reduction in pay, and reprimand." *Smith*, 769 F. Supp. 2d at 470 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225–26 (2d Cir.2006)) (cleaned up). That said, FMLA retaliation claims also apply more broadly to actions "materially adverse to a reasonable employee," meaning they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.* (citing *Hicks v. Baines,* 593 F.3d 159, 165 (2d Cir.2010)).

Here, Plaintiff has plead sufficient facts to plausibly state a retaliation claim. Plaintiff alleges that because she took FMLA leave, Defendants retaliated against her by (1) placing her on

a PIP, (2) failing to engage in substantive discussions on how Plaintiff could improve her performance, and (3) terminating her employment. (FAC ¶ 82.) As Defendants concede, termination is an adverse employment action. (Def. Mem. at 7.) However, Defendants argue that neither their failure to engage in discussions with Plaintiff or their placing Plaintiff on a PIP is an adverse employment action. (*Id.* at 9.) Even if Plaintiff experienced adverse employment actions, Defendants argue Plaintiff failed to plead a causal connection between her taking FMLA leave and the alleged adverse employment actions. The Court disagrees with Defendants.

In asserting a retaliation claim, in contrast to discrimination claims, "negative performance reviews, standing alone, can be considered an adverse employment action." *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008); *see also Zelnik*, 464 F.3d at 225 (2d Cir. 2006) (explaining "adverse employment action" has different meanings in the retaliation versus discrimination context). Accordingly, Plaintiff's receipt of a negative performance review in November 2021, which she described as "far more critical and negative" (FAC ¶ 34), and her being placed on a PIP both constitute adverse employment actions. *Taylor v. New York City Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012) (plaintiff's receipt of unsatisfactory ratings constitute adverse employment actions). Moreover, as Plaintiff explicitly alleges, she was "ineligible to receive a raise or promotion while on the PIP and six months thereafter." (FAC ¶ 43.) Limiting an employee's ability to receive an increase in pay or a higher title may certainly dissuade a reasonable worker from exercising her FMLA rights. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) ("A formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment; it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy.").

Defendants further argue that Plaintiff fails to plead a causal connection between her protected activity and the alleged adverse employment action, as Plaintiff's claim is solely based on the temporal proximity between her taking FMLA leave and her being placed on the PIP and, ultimately, terminated. Specifically, Defendants argue the time between Plaintiff's return from FMLA leave in October 2021 and her termination on March 2022, a period of about five months, is too attenuated a temporal relationship. (Def. Mem. at 11.) To the extent Plaintiff relies on the one-month period between her February request and her second FMLA leave, Defendant maintains this too is deficient because Plaintiff had previously taken leave in August 2021 and remained employed for nine months thereafter. (Def. Mem. at 12 (citing *Betances v. MetroPlus Health Plan, Inc.*, No. 20-CV-2967 (JGK), 2021 WL 2853363, at *7 (S.D.N.Y. July 7, 2021)).)

At the pleading stage, a plaintiff is not required to show a causal connection between her protected activity and the adverse employment action, but merely must set forth a legally cognizable claim. *Smith*, 769 F. Supp. 2d at 472 (citing *Krosmico v. JP Morgan Chase & Co.*, No. 06-CV-1178 (SJF), 2006 WL 3050869, at *3 (E.D.N.Y. Oct. 19, 2006)). In her FAC, Plaintiff relies on two instances of protected activity—her June 2021 leave request and her February 2022 leave request—and four alleged adverse acts: (1) November 2021 Evaluation; (2) January 2022 PIP; (3) WMC's alleged failure to engage in substantive discussions, coaching, or guidance regarding the PIP's identified areas of improvement; and (4) her March 2022 termination. (FAC ¶¶80, 82; Def. Mem. 22-23.) That said, in her Opposition, Plaintiff appears to limit her FMLA retaliation claim to her February 2022 leave request and her March 2022 termination and relies solely on the temporal proximity between the two.[1] (Pl. Opp. at 12.) Although the Court finds

---

[1] As Plaintiff does not address Defendants' arguments regarding the causal connection between her first FMLA leave and any subsequent adverse employment action and centers her argument around her February 2022 FMLA leave request, the Court also focuses its analysis on the same issue. *Schik v. Miramed Revenue Grp., LLC*, No. 18-CV-7897 (NSR), 2020 WL 5659553, at *7 (S.D.N.Y. Sept. 23,

Defendants arguments persuasive, it determines that at this stage Plaintiff's allegations are just sufficient to plausibly state a retaliation claim, and thus Plaintiff should have the opportunity to further develop the factual record.

Plaintiff relies on the temporal proximity between her March 2022 firing and her requesting FMLA leave in February 2022. (Pl. Opp. at 13.) The Second Circuit has held a one-month gap between protected activity and an adverse employment action sufficient to give rise an inference of retaliatory intent, and the Court determines the same here. *See, e.g.*, *Treglia v. Town of Manlius,* 313 F.3d 713, 721 (2d Cir.2002). Moreover, the Court also finds *Betances* distinguishable. (Def. Mem. at 12 (citing *Betances*, 2021 WL 2853363, at *7).) In *Betances*, the plaintiff engaged in the same protected activity "on numerous occasions," starting more than two years prior to his termination. *Betances*, 2021 WL 2853363, at *6. Here, Plaintiff had previously taken FMLA leave on only one occasion, to undergo treatment for a related medical issue, and had returned from that leave only four months prior.

In her Opposition, Plaintiff asserts a new legal theory not articulated in her FAC: by placing her on a PIP and then declining to help her improve her performance, Defendants subjected Plaintiff to a "de facto termination." (Pl. Opp. at 13.) More specifically, Plaintiff argues Defendants' "de facto termination" "justif[ied] ousting Plaintiff" and "served as pretext for retaliatory animus" for her taking leave. (*Id.*) Plaintiff further theorizes that Defendants had a "consistently negatively attitude" towards her for taking leave and had decided to terminate her long before her termination and much closer in time to her taking leave. (*Id.* at 15.) The Court declines to consider Plaintiff's newly raised legal theories not previously asserted in the FAC. *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 791462, at *2

---

2020) ("[F]ailure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.") (collecting cases).

(S.D.N.Y. Mar. 5, 2013) ("If the plaintiff wishes to add new claims, theories, or allegations to its pleadings, the proper course is to seek leave of the Court to do so.") (citing Fed. R. Civ. P. 15(a)). Moreover, even if the Court were to consider these theories of "de facto termination," it agrees with Defendant that it amounts to nothing more than speculation and conjecture, insufficient to push Plaintiff's claim across the line from possible to plausible. (*See* Def. Mem. at 7); *see Twombly*, 550 U.S. at 570. Similarly, the Court declines to consider Plaintiff's newly alleged fact that Virginia "Ginny" Gorgan, an allegedly similarly situated employee, was non-disabled. (Pl. Opp. at 17; FAC ¶ 48.).

Finally, the Court would like to quickly address Defendants final two arguments, both of which the Court finds meritless. First, Defendants argue that Plaintiff "admits that during this period her performance *did* change," thereby severing any causal inference based on temporal proximity. (Def. Mem. at 12 (emphasis in original).) However, the Court does not interpret any allegations in Plaintiff's FAC as making this supposed admission nor do Defendants cite to where this admission is supposedly made. Second, Defendants argues that Plaintiff fails to identify the decisionmakers behind her termination, and whether they were aware of her FMLA leave request. (Def. Mem. at 12.) Even the cases cited by Defendants indicate that the court did not base its decision on the plaintiffs' failure to identify the relevant "decisionmakers" but merely the "employee" who engaged in or had knowledge of the retaliation. *Majeed v. ADF Cos.*, No. 11-CV-5459, 2013 U.S. Dist. LEXIS 23958, at *38 (E.D.N.Y. Feb. 20, 2013) (dismissing complaint for conclusory statements failing to identify "who actually engaged in the claim retaliation"); *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007) (same). Plaintiff does identify individuals who had knowledge and who actually engaged in the retaliatory conduct: Robinson was present during the termination meeting (FAC ¶ 63) and Ms. Brennan told Plaintiff

12

her firing was due to "performance" (FAC ¶ 64). At this stage of the litigation, these allegations are sufficient. *See Rodriguez v. New York City Dep't of Educ.*, No. 1:21-CV-3561 (MKV), 2022 WL 4484576, at *10 (S.D.N.Y. Sept. 26, 2022) (temporal proximity without identifying decisionmakers sufficient to establish causal connection at motion to dismiss stage).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's FMLA retaliation claim.

### b. Interference

Plaintiff alleges Defendants interfered with her FMLA rights by terminating her employment less than one week before she was scheduled to take leave. (FAC ¶ 75.) The Court determines Plaintiff's allegations fail to plausibly state a claim.

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain or deny the exercise or the attempt to exercise any right provided" by the Act. 29 U.S.C. §2615. To state an interference claim under FMLA, a plaintiff must show: "(1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

First, Defendants argue that Plaintiff's FMLA interference by termination claim is a retaliation claim. (Def. Mem. at 2.) Defendants, however, misinterpret the caselaw they rely on in making this assertion. In those cases, the plaintiff failed to allege she was entitled to any other benefits prior to her termination or that she intended to take leave after her termination. *Yanklowski v. Brockport Cent. Sch. Dist.*, 794 F. Supp. 2d 426, 428 (W.D.N.Y. 2011) (plaintiff took FMLA leave three times and made further no requests for leave prior to her termination); *LeClair v. Berkshire Union Free Sch. Dist.*, No. 1:08-CV-01354 LEK/RF, 2010 WL 4366897, at *6

(N.D.N.Y. Oct. 28, 2010) (plaintiff granted leave each time she requested it and provided "no evidence that the school district interfered with, denied, or restrained Plaintiff's exercise of FMLA rights"). The district court case *Di Giovanna* is somewhat analogous, as plaintiff alleges he was terminated "due to alleged performance problems that resulted from the very use of his FMLA leave." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009). However, in that case, the plaintiff failed to produce evidence that he was ever denied a leave request or that the defendants "ever told him that he could not or should not take off the day he requested." *Id.* Here, Plaintiff pleads actual interference with her FMLA entitlements—Plaintiff was granted leave but was terminated before she could exercise her right to take it. Accordingly, Plaintiff's interference claim is not a retaliation theory in disguise. (*See* Def. Mem. at 1.)

That said, Defendants argue that even if Plaintiff's claim is not construed as a retaliation claim, Plaintiff's interference claim still fails because Plaintiff "fails to allege any facts showing that FMLA leave, rather than poor performance, was a factor in her termination decision." (*Id.* at 3-4.) To assert an interference claim, Plaintiff must show that Defendants "considered her FMLA leave . . . a negative factor in its decision to terminate her." *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006)) (cleaned up). "[I]t is well-settled that an employer is not liable for interfering with an employee's leave when the employee would have been terminated regardless of leave." *Id.* (citations omitted).

Here, Plaintiff fails to allege that her FMLA leave was a negative factor in her termination. As Plaintiff makes clear in her Opposition, "Plaintiff has pled facts that indicate her initial FMLA leave . . . was a negative factor in Defendants' decision *to place her on a PIP*." (Pl. Opp. at 10 (emphasis added).)  In her FAC, Plaintiff merely alleges "Defendants interfered with [her] FMLA

14

rights by terminating her employment on March 1, 2022, less than one week before her approved FMLA leave was set to begin." (FAC ¶ 75.)  Nowhere in her Opposition or her FAC does Plaintiff allege that the FMLA leave *itself* negatively factored in Defendants' decision to terminate her. Accordingly, the Court dismisses Plaintiff's FMLA interference claim.[2]

### B.   ADA Claims

#### a. Discrimination

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To sufficiently plead a claim for employment discrimination under the ADA, a plaintiff must demonstrate that (1) his or her employer is subject to the ADA; (2) he or she was disabled within the meaning of the ADA; (3) he or she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he or she suffered an adverse employment action because of the disability.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).  At the motion to dismiss stage, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Dooley v. Jetblue Airways Corp.*, Fed. Appx. 16, 19–21 (2d Cir. 2015) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

---

[2] Plaintiff's assertion in her Opposition that "Defendants' attitude towards Plaintiff for taken FMLA never wavered but was *consistently negative* through her firing" (Pl. Opp. at 14 (emphasis in original)) may come close to alleging her FMLA leave negatively factored into her termination. However, as discussed above, the Court declines to consider Plaintiff's new legal theory raised in her Opposition papers. (*See supra* at 12.)

Under the ADA, "[a] qualifying disability 'must limit a major life activity and the limitation must be substantial.'" *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (quoting *Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005, 2008 WL 2882092, at *10 (S.D.N.Y. July 9, 2008)). "In other words, the ADA protects only a limited class of persons—individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life." *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) (internal quotations and citations omitted).

To successfully plead a qualifying disability under the ADA, a plaintiff "must allege which major life activity or activities their impairment substantially affects." *Laface v. E. Suffolk BOCES*, No. 2:18-cv-1314 (ADS) (AKT), 2020 WL 2489774, at *10 (E.D.N.Y. May 18, 2020). "'Major life activities' include: 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting 42 U.S.C. § 12102(2)(A)). It is "well-established that an impairment does not significantly restrict a major life activity if it results only in mild limitations." *Collins v. Giving Back Fund*, No. 18 Civ. 8812 (CM), 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (quoting *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97 Civ. 4018(VM), 2001 WL 55726, at *4 (S.D.N.Y. Jan. 22, 2001)). Moreover, it is not enough for a plaintiff to only "allude to her [or his] impairments in her [or his] pleadings; she [or he] must plead *how* those impairments significantly impacted her [or his] major life activities." *Id.*

Plaintiff alleges "Defendants have discriminated against Plaintiff in violation of the ADA by, *inter alia*, denying her the equal terms and conditions of employment because of her disability

16

(arthritis)." (FAC ¶ 100.) Defendant challenges Plaintiff's disability-based discrimination claim on the grounds that she does not suffer from a qualified disability. (Def. Mem. at 14-15.) Specifically, Defendants argue Plaintiff fails to sufficiently plead her arthritis condition *substantially* impaired major life activities *during the relevant time period*. (*Id.* (emphasis added).)

At the outset, the Court is unpersuaded that Plaintiff has failed to allege she did not suffer from her disability during the relevant time period. (*See* Def. Mem. at 14-15.) While Plaintiff may not explicitly say so, it is clear from her FAC that between her taking leave in August 2021 and her termination in March 2022 she continued to suffer from her arthritis. Plaintiff does not allege that her chronic pain and debilitating arthritis were a "temporary impairment." *See Alvarez v. New York City Dep't of Educ.*, No. 20-CV-255 (VSB), 2021 WL 1424851, at *6 (S.D.N.Y. Apr. 15, 2021) (dismissing ADA claim where plaintiff alleged she missed work for 26 days due to knee surgery but failed to allege impairment limited her life activities after returning to work). Rather, Plaintiff underwent one surgery and had another scheduled throughout that period, which indicates that she continued to suffer from her condition during that time. (*See* FAC ¶¶ 39, 56 (in or around late December 2021, Plaintiff and her physician discussed her limp and abnormal gait and scheduled her second surgery for March 7, 2022).) Moreover, Plaintiff clearly states she discussed the "ongoing pain she was experiencing in her hips, her continued sleep apnea, and her ulcer" in late February 2022. (FAC ¶ 61.) Despite Defendants assertions to the contrary, then, Plaintiff did not "fail[] to allege *any* impairment she suffered" after returning from leave in October 2021.

Accordingly, the Court need only to determine whether Plaintiff has sufficiently alleged she suffered from a substantial impairment. "The term 'substantially limits' is construed broadly in favor of expansive coverage and is not meant to be a demanding standard." *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 393 (E.D.N.Y. 2016) (citing 29 C.F.R. §

1630.2(j)(1)(i)). That said, to assert an ADA claim, a plaintiff must still adhere to the pleading requirements of Federal Rule of Civil Procedure 8. *Id.* The Court agrees that Plaintiff has failed to plead her arthritis substantially limited major life activities.

Plaintiff alleges she suffers from "debilitating arthritis, chronic pain, and limited range of motion in her legs and hips, which makes it exceedingly difficult for her to get dressed, walk any meaningful distances, and sleep." (FAC ¶ 27.) She further alleges she takes "pain medication and various dietary supplements" to regain her energy. (*Id.*) Regarding the impact of her condition on her ability to work, Plaintiff alleges her arthritis "hinder[ed] her ability to make rounds and supervise staff, sit and work for long periods of time, and commute to WMCHN's sites in Valhalla and MHRH in Poughkeepsie." (*Id.* ¶ 28.)

Plaintiff's claims that her arthritis makes it "exceedingly difficult" to engage in the activities she identifies fall short of establishing that her ability to get dressed, walk, and sleep was "substantially limited." It is well-established that a plaintiff must do more than assert "conclusory statements about sleep difficulties" to adequately assert a substantial limitation. *Kelly*, 200 F. Supp. 3d at 393 (collecting cases); *Telemaque v. Marriott Int'l, Inc.*, No. 14 CIV. 6336 (ER), 2016 WL 406384, at *9 (S.D.N.Y. Feb. 2, 2016) ("[A]bsent more specific factual allegations regarding his sleep problems, Plaintiff fails to plead that his high blood pressure causes a substantial limitation on his ability to sleep.") (collecting cases). While Plaintiff does allege her lack of sleep causes her to lose energy such that she requires medication, her difficulty sleeping still does not constitute a "substantial limitation" without her alleging "her problems were any worse than suffered by a large portion of the nation's adult population." *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 16 (2d Cir. 2011) (citation omitted); *see also Gaube v. Day Kimball Hosp.*, No. 3:13-CV-01845 VAB, 2015 WL 1347000, at *8 (D. Conn. Mar. 24, 2015) (collecting cases).

Without more, Plaintiff's vague, conclusory claim that she had difficulty walking "meaningful distances" is also insufficient. *See Smith v. Reg'l Plan Ass'n, Inc.*, No. 10 CIV. 5857 BSJ KNF, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011) ("Merely alleging 'difficulty walking' does not pass this threshold."). While the court has determined walking "with a limp and abnormal gait" may constitute a significant restriction on a major life activity, Plaintiff has still failed to allege that her limp or abnormal gait substantially limited her ability to walk. *Compare Dipinto v. Westchester Cnty.*, No. 18-CV-793 (KMK), 2019 WL 4142493, at *7 (S.D.N.Y. Aug. 30, 2019) (plaintiff sufficiently plead he suffers from qualified disability where he alleged he walked with a limp, had a 20 percent permanent loss of use in one foot and a 10 percent loss in the other, and limp substantially limited his ability to walk).

Finally, Plaintiff's allegations regarding her impaired ability to work also fall short. While work is a major life activity under the ADA, a work-related limitation must "show that the limitation affects the ability to perform a *class . . . or broad range of jobs*." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (citing 29 C.F.R. § 1630) (emphasis in original). While Plaintiff's claims may be sufficiently general to apply to a broad class of jobs, their generality also prohibits them from meeting the threshold to establish a "significant limitation." Plaintiff does not plead facts that her arthritis caused a "significant restriction," but rather merely alleges that it "hindered" her ability to perform certain job functions. (FAC ¶ 28.) Moreover, Plaintiff does not provide sufficient detail on how her job functions are impacted by her arthritis.

"Merely having an impairment that *affects* a major life activity does not make one disabled for purposes of the ADA." *Kelly v. Rice*, 375 F. Supp. 2d 203, 207 (S.D.N.Y. 2005). Even the case cited by Plaintiff, despite holding that severe arthritis may qualify as a disability, rebuts her claim of having a qualified disability. (*See* Pl. Opp. at 16 (citing *Shaw v. Greenwich Anesthesiology*

19

*Assoc., P.C.*, 137 F. Supp. 2d 48, 55 (D. Conn. 2001)).). In *Shaw*, the District of Connecticut granted summary judgment and dismissed the plaintiff's ADA discrimination claim where the plaintiff put forth evidence proving only that she was unable to work as a full-time anesthesiologist, therefore the court could not reasonably infer that plaintiff could not work a broad range of jobs. *Shaw*, 137 F. Supp. 2d at 55-56. The level of detail Plaintiff provides regarding her arthritis and its impact on her ability to engage in major life activities is too sparse to show she qualifies as disabled under the ADA. Thus, the Court concludes Plaintiff's vague allegations are insufficient for her to plausibly allege a discrimination claim.

   *b.   Retaliation*

   Retaliation claims under the ADA and FMLA are subject to substantially the same standard. *Wu v. Metro. Transportation Auth.*, No. 1:18-CV-6543-GHW, 2020 WL 615626, at *15 (S.D.N.Y. Feb. 7, 2020) (citing *Spaulding v. New York City Dep't of Educ.*, No. 12-cv-3041 (KAM) (VMS), 2015 WL 12645530, at *41 (E.D.N.Y. Feb. 19, 2015), *report and recommendation adopted*, 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015)). To establish a prima facie case of retaliation under the ADA, a plaintiff must plead that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity" *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted). "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

   For substantially the same reasons that Plaintiff plausibly states a FMLA retaliation claim, Plaintiff has plausibly stated a claim for retaliation under the ADA. Plaintiff experienced an adverse employment action when she was terminated in March 2022. At the pleading stage, the

temporal proximity between her February 2022 request for FMLA leave and March 2022 termination is sufficient for the Court to plausibly infer retaliatory intent. Moreover, contrary to Defendants' assertion (*see* Reply at 9), Plaintiff does not "admit[]" that she was terminated for "performance"— Plaintiff consistently alleges that her termination was in retaliation for her taking FMLA leave. (*See* Pl. Opp. at 12-13, 19-29.) Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's ADA retaliation claim.

## II.      Plaintiff's NYSHRL Claims

The FAC asserts claims under the NYSHRL for discrimination and retaliation against all Defendants, as well as a claim against Robinson and Mackay for aiding and abetting. As a threshold matter, Defendants again have misinterpreted the law[3]—individuals may be held liable under the NYSHRL if he "has an ownership interest" or "the authority to hire and fire employees." *Krause v. Lancer & Loader Grp., LLC*, 40 Misc. 3d 385, 398, 965 N.Y.S.2d 312, 323 (Sup. Ct. 2013) (citations and quotations omitted). Here, Plaintiff alleges Robinson and Mackay "had authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment." (FAC ¶ 16.) Accordingly, Plaintiff may assert NYSHRL claims against Robinson and Mackay.

Having addressed that issue, the Court addresses each of Plaintiff's three claims in turn.

### A.      Notice of Claim

Defendant argues the Court should dismiss Plaintiff's NYSHRL claims because Plaintiff failed to comply with the Notice of Claim requirements. (Def. Mem. at 5.) Plaintiff concedes that she did not submit a Notice of Claim, but argues that the Notice of Claim requirements do not apply to her causes of action sounding in discrimination and retaliation.

---

[3] The case cited by Defendants narrowly held that a corporate employee is not subject to individual liability if he "has not been shown to have any ownership interest or power to do more than carry out personnel decisions made by others." (*See* Def. Mem. at 13); *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 543 (N.Y. 1984).

General Municipal Law ("GML") § 50-e provides that "where a Notice of Claim is required by law as a condition precedent to the commencement of an action . . . [it] shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises." Gen. Mun. Law §50-e (emphasis added).

Plaintiff argues, and Defendant does not dispute, that GML § 50-e applies only to actions sounding in tort, and therefore is inapplicable to Plaintiff's discrimination and retaliation claims. (Pl. Opp. at 21; Reply at 2.) However, Defendant observes that a Notice of Claim is not only required under the GML, but also New York Public Authorities Law ("NYPAL") Section 3316, which applies to public benefit corporations. (Def.  Mem. at 5 (citing N.Y. Pub. Auth. Law § 3316).) Because both statutes require it, Defendant argues, a Notice of Claim is a condition precedent to Plaintiff's NYSHRL claim. (*Id.*) Plaintiff counters that a plain reading of Section 3316 shows it applies only to personal injury or property damages claims. (Pl. Opp. at 21-22.) After due consideration, the Court agrees with Plaintiff.

Section 3316(1)(a) provides in pertinent part:

"Except in an action for wrongful death, no action or special proceeding shall be prosecuted or maintained against the corporation, its members, officers or employees *for personal injury or damage to real or personal property* alleged to have been sustained by reason of the negligence, tort or wrongful act of the corporation or of any member, officer, agent or employee thereof, unless notice of claim shall have been made and served upon the corporation within the time limit set by and in compliance with section fifty-e of the general municipal law."

N.Y. Pub. Auth. Law § 3316(1)(a) (emphasis added). It is clear from the plain reading of the statute that GML Section 50-e applies to public benefit corporations only for actions alleging "personal injury or damage to real or personal property." *Id.* The New York Court of Appeals has established that "[h]uman rights claims are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50–i. Nor do we

perceive any reason to encumber the filing of discrimination claims." *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 731 28 N.E.3d 515, 519 (2015). Accordingly, human rights claims are not tort, personal injury, or personal property claims under Section 3316 either.

The district court opinion in *Aguilar v. New York Convention Center Operating Corp.* proves instructive here. 174 F. Supp. 2d 49 (S.D.N.Y. 2001). In *Aguilar*, the Southern District of New York court dismissed plaintiff's claims under the NYSHRL and the New York City Civil Rights Law ("NYCCRL") for failure to comply with the Notice of Claim requirement. Acknowledging that Section 50-e only applied to cases sounding in tort, the court ultimately concluded that Section 50-e's Notice of Claim requirement applied "as incorporated through the broad language of section 2570 of the [NYPAL]." *Id.* at 54. This conclusion makes perfect sense per the plain language of Section 2570: "[a] notice of claim, served in accordance with the provisions of section fifty-e of the general municipal law, shall be a condition precedent to the commencement of an action against the corporation . . . ." ; *accord Aka v. Jacob K. Javits Convention Ctr. of New York*, No. 09 CIV. 8195 FM, 2011 WL 4549610, at *11 (S.D.N.Y. Sept. 30, 2011).

Similarly, the New York Supreme Court in *Mills* applied the same reasoning and reached the same conclusion with regards to N.Y. County Law § 52. *Mills v. Monroe Cnty.*, 89 A.D.2d 776, 776, 453 N.Y.S.2d 486, 487 (1982), *aff'd*, 59 N.Y.2d 307, 451 N.E.2d 456 (1983). Section 52 states that the notice requirements of Section 50-e applied to "any other claim for damages arising at law or in equity." *Id.*; N.Y. County Law § 52. Here, reviewing the plain language of Section 3316, the Court cannot reach the same conclusion as the courts in *Mills* or *Aguilar*. There is no "broad statutory language" incorporating the requirements Section 50-e into the statute governing

public benefit corporations. The law remains tailored to claims sounding tort, which Plaintiff does not assert against Defendant.

Finally, the cases cited by Defendants are distinguishable, unpersuasive, or not on point. The plaintiff in *Cortlandt* not only asserted some state law claims sounding in tort, but also at issue were notice of claim requirements for employees and when a court can permit plaintiff to file a late notice of claim. *Cortlandt v. Westchester Cnty.*, No. 07 CIV 1783 (MDF), 2007 WL 3238674, at *7-8 (S.D.N.Y. Oct. 31, 2007). *Harris* involves an inmate alleging inadequate medical care, and *Ruff* contains no analysis of the Notice of Claim issue at all. *Harris v. Viau*, No. 17-CV-9746 (KMK), 2019 WL 1331632, *1-2 (S.D.N.Y. Mar. 25, 2019); *Ruff v. Westchester Cnty. Healthcare Corp*, No. 05 CIV. 5116, at *2 (CLB), 2005 WL 8179307 (S.D.N.Y. Dec. 13, 2005). Similarly, the district court *Obi* conducts little to no analysis of the issue and relies on *Cortlandt* and *Harris* to reach its conclusion. *Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, No. 19 CV 3022 (VB), 2020 WL 1434159, at *4 (S.D.N.Y. Mar. 23, 2020).

Accordingly, the Court concludes, in accordance with prevailing caselaw, that a Notice of Claim requirement is inapplicable here and denies Defendants' motion to dismiss on this ground.

## B.    Discrimination

Plaintiff alleges Defendants discriminated against her "by, *inter alia*, denying her the equal terms and conditions of employment because of her disability." (*See* FAC ¶ 85.) To plead a NYSHRL discrimination claim, a plaintiff must show "(1) [he] suffers from a disability as that term is defined under the statute, and (2) that the disability caused the behavior for which [he] was terminated." *Anyan v. New York Life Ins. Co.*, 192 F. Supp. 2d 228, 245 (S.D.N.Y. 2002), *aff'd sub nom. Anyan v. Nelson*, 68 F. App'x 260 (2d Cir. 2003) (citation omitted).

Under the NYSHRL, the definition of disability is "significantly broader than the ADA definition." *Anyan*, 192 F. Supp. 2d at 245. "Any medically diagnosable impairment is sufficient."

*Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 631 (S.D.N.Y. 2007) (citation omitted). Defendants only briefly address this more liberal standard in their memorandum, simply stating "Plaintiff's claims still fail under this slightly more liberal definition." (Def. Mem. at 14 n. 7.) The standard is certainly more than "slightly more liberal," as courts in this district have held that a plaintiff suffers from a disability under the NYSHRL despite not qualifying as disabled under the ADA.  *See, e.g.*, *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998) (panic disorder with agoraphobia disability under NYSHRL but not the ADA); *Koonce v. Whole Foods Mkt. Grp., Inc.*, No. 22 CV 10418 (VB), 2023 WL 8355926, at *3-5 (S.D.N.Y. Dec. 1, 2023) (plaintiff's concussion, diabetes, and incontinence disabilities under the NYSHRL but not the ADA); *Shannon v. Verizon New York, Inc.*, 519 F. Supp. 2d 304, 310 (N.D.N.Y. 2007) (Plaintiff's incontinence a disability under NYSHRL but not the ADA).

Here, Plaintiff indicates she is receiving treatment from a physician to treat her arthritis, and she had plead that her arthritis is "debilitating" and she has "limited range of motion in her legs and hips," making it "exceedingly difficult" to "get dressed, walk any meaningful distances, and sleep." (FAC ¶ 29.) Moreover, Defendants do not challenge the reliability or accuracy of her arthritis diagnosis. Plaintiff has thus plausibly alleged arthritis is a "medically diagnosable impairment." *Anyan*, 192 F. Supp. 2d at 246. Therefore, under NYSHRL's more liberal standard, Plaintiff has sufficiently plead she is disabled under the NYSHRL.

The Court must determine whether Plaintiff has plead facts to plausibly infer discriminatory intent. In her Opposition, Plaintiff frames her NYSHRL discrimination claim as a failure to accommodate claim. Specifically, Plaintiff alleges Defendants were aware of Plaintiff's disability and its impact on her major life functions, but they "failed to engage in the interactive process to discern whether a reasonable accommodation would allow Plaintiff to better perform

her job, in violation of the NYSHRL 'independent duty' to accommodate a disabled worker." (Pl. Opp. at 20.) Plaintiff further alleges Defendants discriminated against her when she  was terminated after she requested a reasonable accommodation.[4] (Pl. Opp. at 20-21.)

Defendants argue even if Defendants had knowledge of Plaintiff's arthritis diagnosis and symptoms, Plaintiff fails to allege Defendants possessed any knowledge as to *how* her diagnosis or symptoms impacted her ability to perform before and after taking leave. (Def. Mem. at 18.) Even if Defendants knew of Plaintiff's disability, Defendants argue that any notion of discriminatory animus is "undercut[]" by Defendants "accommodating her disability, supporting and advancing her career, and waiting months, if not years, to act on such animus." (*Id.* at 20.)

To state a failure to accommodate claim under the NYSHRL, plaintiff must show "1) she was disabled within the meaning of the statute; (2) the employer had notice of her disability; (3) she was able to perform the essential functions of her job with a reasonable accommodation; and (4) the employer refused to make such an accommodation." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2004)).

Plaintiff's failure to accommodate claim fails. Failure to engage in an interactive process does not, in and of itself, create an independent cause of action under the NYSHRL. *Sheng v. M&Tbank Corporation*, 848 F.3d 78, 87 (2d Cir. 2017); *Greenbaum v. N.Y.C. Transit Auth.*, No. 20-cv-771 (DLC), 2021 U.S. Dist. LEXIS 119024, at *23 (S.D.N.Y. June 25, 2021), *aff'd in part*

---

[4] Defendants concede that, and Plaintiff centers her argument around, Plaintiff's March 2022 termination is an adverse employment action. (Def. Mem. at 17.) As Plaintiff does not address Defendants' arguments regarding whether the other actions she was subjected to are adverse employment actions, the Court finds any arguments to that effect are abandoned. *Schik v. Miramed Revenue Grp., LLC*, No. 18-CV-7897 (NSR), 2020 WL 5659553, at *7 (S.D.N.Y. Sept. 23, 2020) ("[F]ailure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.") (collecting cases).

*and vacated in part on other grounds*, No. 21-1777, 2022 U.S. App. LEXIS 22589, (2d Cir. Aug. 15, 2022). Rather, failure to engage in the interactive process "can be introduced as evidence tending to show" disability discrimination and "that the employer refused to make a reasonable accommodation." *Sheng*, 848 F.3d at 87. Here, Plaintiff merely alleges that Defendants Robinson and Mackay failed to engage in the interactive process and suggests some potential reasonable accommodations that Defendants could have provided. (FAC ¶ 40.) However, Plaintiff does not plead any facts beyond her conclusory assertion. Most significantly, she fails to allege Defendants refused to provide reasonable accommodations. While Plaintiff does allege she requested FMLA leave, which constitutes a reasonable accommodation,[5] both of Plaintiff's requests for leave were granted. Accordingly, Plaintiff does not allege any factual allegations to plausibly state a claim for failure to accommodate under the NYSHRL.

### C.    Retaliation

Plaintiff arguments in support of her NYSHRL retaliation claim is substantially the same as for her ADA retaliation claim. (Pl. Opp. at 21 ("[F]or the same reasons why Plaintiff's ADA retaliation claims are sustainable, her NYSHRL retaliation claims . . . has also been sufficiently pled.").) Accordingly, the Court construes Plaintiff's NYSHRL retaliation claim as alleging Defendants retaliated against her in violation of the NYSHRL by placing her on a PIP after she requested FMLA leave and terminating her after she requested FMLA leave.

However, although Plaintiff's retaliation claims under the FMLA and ADA survive, her retaliation claim under the NYSHRL is deficient. As Defendants correctly explain, "a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim" under the

---

[5] *See Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) ("A temporary leave of absence, even an extended leave, can be a reasonable accommodation.") (citing *LaCourt v. Shenanigans Knits*, Ltd., No. 102391/11, 38 Misc.3d 1206(A), 2012 WL 6765703, at *5 (N.Y.Sup.Ct.2012)).

NYSHRL. *Mejia v. City of New York*, No. 17CV2696NGGJO, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020) (quoting *Witchard v. Montefiore Med. Center*, 960 N.Y.S.2d 402, 403-04 (1st Dep't 2013)). As Plaintiff's claim is dependent on retaliation for her requesting leave, her NYSHRL retaliation claim is therefore dismissed.

### D.     Aiding and Abetting

 The NYSHRL provides "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). Liability exists under the NYSHRL where a defendant "actually participates in the conduct giving rise to the claim of discrimination" and shares "the intent or purpose of the principle actor." *Fried v. LVI Serv. Inc.*, No. 10-CV-9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011). A finding "that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." *Id.* (quoting *Brice. v. Sec. Ops. Sys., Inc.*, No. 00-CV-2438 (GEL), 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001)).

Plaintiff alleges Defendants Robinson and Mackay violated the NYSHRL by aiding and abetting unlawful discrimination and retaliation against her. Under the NYSHRL standard for aiding and abetting liability, "[t]here is, however, a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999). As Plaintiff has fails to assert NYSHRL retaliation and discrimination claims against Defendant WMCHN, her aiding and abetting claim against Robinson and Mackay must also fail.

### CONCLUSION

Defendants' motion to dismiss Plaintiff's First Amended Complaint is GRANTED IN PART and DENIED IN PART.  The Court grants Defendants' motion and dismisses without prejudice Plaintiff's claims for (1) discrimination under the ADA (2) interference under the

FMLA, (3) and discrimination, retaliation, and aiding and abetting under the NYSHRL. The Court denies Defendants' motion to dismiss Plaintiff's retaliation claims under the FMLA and ADA.

The Court grants Plaintiff leave to file a Second Amended Complaint. If she chooses to do so, Plaintiff's deadline to file her Second Amended Complaint is March 8, 2024.  Plaintiffs is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, Defendants are directed to answer or otherwise respond by March 29, 2024. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 33.

Dated:   February 16, 2024                                    SO ORDERED:
         White Plains, New York

_____
         NELSON S. ROMÁN
        United States District Judge